SCHOTT, Chief Judge.
Defendant was convicted of distribution of dihydrocodeinone in violation of R.S. 40:968 and sentenced to four years at hard labor.
Officer Darren Hartman testified that he and an informant, Howard Ard, went to the defendant’s home on July 12, 1986; one of defendant’s children admitted them and they went upstairs to defendant’s bedroom where Hartman purchased two tablets from defendant. A forensic scientist testified that the tablets were positive for dihy-drocodeinone.
Defendant’s daughter, Sally, testified that she admitted Ard to the house, but she did not see anyone with him. After he went upstairs to see her father she heard him say he would not sell his medicine, she heard him yelling, and she saw Ard and a police officer come downstairs and leave the house. On cross examination she testified that she knew Hartman was a police officer because he had come to their house on July 11 and tried to buy drugs. She stated that she was arrested as a result of the July 11 incident and her mother was convicted of selling drugs.
Henry Landry, defendant's son, testified that he heard his father cursing Ard and Hartman, telling them he would not sell his medicine to them. Sherry Landry, another daughter, testified to substantially the same effect. Defendant testified that the tablets were prescription medication, but he denied selling any to Hartman.
By his first and third assignments defendant argues that much of the testimony of Officer Hartman and his supervisor, Sergeant Miller, was inadmissible as irrelevant or containing hearsay. This testimony provided the background of an undercover operation called “Operation Eightball” which consisted of the use of Howard Ard as an informant, surveillance over an extended period of time, and numerous arrests and convictions including defendant’s arrest. Defendant argues that this evidence prejudiced his case because the only witness testifying against him was Hartman and the evidence served to bolster his credibility before the jury.
We are not convinced that this testimony was objectionable hearsay or irrelevant. Miller’s testimony concerning the overall operation was based on his personal knowledge that it was taking place. He was personally involved in it. It was not offered to prove the truth of the details which were supplied to him such as dates and places of arrests and names of persons arrested and he did not testify as to such details. As to relevance, Miller’s and Hartman’s testimony properly presented the pertinent background leading to defendant’s arrest, the background on Ard to show his reliability as an informant, and an explanation of why the police did not arrest defendant immediately, but waited until the whole operation was completed.
Even assuming that some of this evidence was inadmissible we would conclude that its admission constituted harmless error because we are convinced that it did not influence the jury or contribute to the verdict. Defendant’s argument that this extensive background unduly and artificially built up and fortified Hartman’s testimony to make him a more credible witness is speculation.
*600 Defendant’s more serious assignments concern testimony by his daughter concerning her arrest and her mother’s conviction for selling drugs. While his arguments that this testimony was irrelevant and inadmissible are meritorious, We have concluded that the admission of such evidence did not constitute reversible error considering the record as a whole. A thorough and careful reading of the testimony of defendant’s daughter Sally, is necessary in order to evaluate defendant’s arguments on these assignments.
On direct examination she testified that Ard, her next door neighbor, came to the door and asked to see her father, she didn’t see anyone with him, and she told him “to go ahead straight up.” She thought her father was sleeping, she heard Ard go up, and she heard her father yelling and saying he would not sell his medicine. Then she saw Ard and a police officer coming down the steps. Her direct examination concluded as follows:
Q. Did you know Hartman prior to that date?
A. I know Hartman because on another occasion—
Q. Okay, but did you at any time prior to that date inform your dad of the fact that Hartman was a police officer?
A. Yes, I did.
The prosecutor began his cross examination as follows:
Q. You say you knew Hartman was a police officer?
A. Yes, I did.
Q. From what occasion did you know him to be a police officer?
A. He came to my house on the 11th when my momma and my daddy and everybody — was home. He came with Howard, Ard, and Howard Ard said that was his cousin. I said, “Ma, that’s a police officer.” He said, “No, I am not. I am his cousin.” I said, “No, you are a police officer.”
Q. What day did he come by your house?
A. The 11th.
Q. Was this before this incident with your father?
A. Uh-huh, sure did.
Q. And did he buy anything on that incident?
A. No, he never, because my momma told him to get out.
Q. Do you recall being arrested as a result of that?
MR. ESCUDIER:
Objection, Your Honor. Arrests absolutely cannot get in this, and it’s prejudicial to bring in the fact of whether or not she was arrested.
MR. DIAZ:
Well, let me ask you another question.
MR. ESCUDIER:
Mr. Diaz knows the only thing we can go into is convictions. She has never been convicted of anything.
THE COURT:
Sustained.
BY MR. DIAZ:
Q. Let me ask you do you recall your mother being convicted of distribution of drugs as a result of that incident?
A. I have to answer this?
MR. ESCUDIER:
Yes, you do, if you have knowledge of it. (emphasis supplied)
THE WITNESS:
Yes.
From this point she testified on cross examination that Hartman had arrested her and her brother for selling drugs and because “he [the brother] has a baby on the way” and her mother didn’t want them to go to jail, the mother pled guilty to selling drugs to Hartman. There was no objection whatsoever to this testimony. Only after the prosecutor asked for the exact address of the house where this happened did counsel object and this was on the basis that the question about the address was repetitious. At another point defense counsel objected to a question as being argumentative. Without objection from defense counsel her testimony continued as follows:
Q. Well, what makes you remember this date?
*601 A. Because I remember it because I’m the one that said on the 11th that he was a cop when he came the first time.
Q. What makes you remember this date, ma’am? Is it someone’s birthday? What stands out?
A. No, from what happened.
Q. What stands out about this date that you remember it?
A. Jesus, I don’t know. I just remember it because I was home when it happened.
Q. Well, what did you do two days after that? Do you remember that?
A. What did I do two days after that? No, not everything.
Q. What did you do three days after?
A. I was pregnant. I didn’t go no-wheres. I stood home most of the time.
Q. Well, what did you do three days before that?
A. I might have went shopping. I don’t know. I don’t remember. God.
Q. Now, your father wasn’t arrested the night that Howard Ard and Mr. Hartman came to his house?
A. No joke.
Q. What, ma’am?
A. I said no because I was arrested the same day he was arrested. They had me on the same thing, selling drugs. When I came to court, they changed it.
Q. After your momma pled guilty?
A. No. They changed it before my momma pled guilty, and they threw it out on me.
Q. No, after your momma pled guilty?
A. Mr. Diaz, you don’t have — you are the one that dropped the charges and threw it out.
Q. Didn’t you say you had a baby?
A. Yes. I just had a baby when y’all arrested me.
Q. How old is your baby?
MR. ESCUDIER:
Your honor, I am going to object.
THE WITNESS:
He is a year and a half, fifteen months.
MR. ESCUDIER:
Your Honor, I am going to object on the basis that all of this is irrelevant to the facts before us today. On that basis, I am objecting to all of this testimony going in.
THE COURT:
Objection Overruled.
In the balance of her testimony on cross examination Sally reiterated that she heard the discussion and argument upstairs, she was familiar with her father’s medicine, she didn’t see Hartman go upstairs with Ard, but she heard three voices in the argument. At this point the following question and answer came in without objection:
Q. Well, how do you know it was the cop’s voice?
A. I didn’t know it was his until after I went to the stairs and he came down, I saw him. I know he is a police officer because when I got arrested before I seen him here.
After the foregoing question and answer the prosecutor concluded his cross examination of Sally and defense counsel began his redirect examination as follows:
Q. You were not convicted of any criminal offense growing out of your arrest; is that correct?
A. No, I wasn’t. It was throwed out by Mr. Diaz and the Judge.
Q. Now, insofar as Darren Hartman is concerned, you had previously been arrested for some offense prior to these dates, and you had seen Darren Hartman at that time?
A. Yes, I did.
Q. So, you knew him to be a police officer?
A. Yes, I did.
Q. It’s your testimony that you communicated that to your mother and your father before July 12th?
A. Yes, I did.
Q. Ultimately, on these dates of July 11th and the 12th for which your mother and your dad were arrested, you ultimately got arrested for those offenses, too?
A. Yes, I did
*602 Q. I see. So, do you recall this matter because you were also charged with the same thing?
A. I was. Yes, I was charged with it.
Q. I see. Okay, how well did you and the members of your family know Howard Ard?
A. We didn't know him. We just knew him because he was our neighbor.
After the prosecutor got into his recross examination with questions about the medication her father was taking he asked her the following:
Q. Now you were in court with your mom when she pled guilty, right?
A. Yes, I sure was.
Q. Didn’t the Judge put her under oath?
At this point defense counsel objected, but on the sole ground that these questions were beyond the scope of his redirect examination. The judge overruled this objection and the testimony continued as follows:
Q. Do you remember her being under oath?
A. What, getting on the stand?
Q. Being sworn-in to tell the truth when she entered her guilty plea for selling the drugs?
A. I don’t know. She ain’t gone on the stand. I know that.
Q. She stood before the Judge?
A. Before the Judge because she never got on the stand.
Q. Now, if you knew Mr. Hartman was a police officer—
A. Okay.
Q. Why didn’t you tell your mom he was a police officer when she sold drugs to him in your house?
A. I did tell my momma, and my momma never sold no drugs. She pleaded guilty because you threatened to put me on trial and try me for drugs when I never sold nothing, Mr. Diaz.
Q. I just thought you said I dropped the case against you.
A. You did drop it, but you brung it back up. I told you you couldn’t do that, and you said you are the D.A. You could do anything you want.
At this point defense counsel again objected solely on the ground that questions exceeded the scope of the redirect. Then the prosecutor began questioning Sally on the point that she had an attorney with her in court when these things occurred and he asked her if she conferred with the attorney about her statements and actions. At this point defense counsel moved for a mistrial and argued at length about the propriety of questions concerning advice Sally’s previous attorney had given her. The court denied the motion.
In this court defendant argues strenuously that this testimony by Sally concerning her arrest was inadmissible and predjudicial when considered along with the testimony about her mother. Ordinarily evidence of a previous arrest is inadmissible. Former R.S. 15:495; now C.E. art. 609.1. However, this rule alone does not govern our resolution of the issue in this case. She testified, like her brother and sister afterwards, that she heard her father say he would not sell his medicine to Ard and Hartman. As can be seen from the foregoing summary of and excerpts from her testimony, even if the prosecutor’s questions about her arrest were considered as an impermissible attempt to impeach her by the use of this previous arrest, there was no objection to the questions which in itself precludes defendant from urging this as an error on appeal. C.Cr.P. art. 841. Not only is there no objection but as emphasized above defense counsel told her to go ahead and testify about her mother’s conviction. More importantly, our reading of the testimony convinces us that this evidence of Sally’s previous arrest was purposely allowed in by the defendant in defense of his case.
If defendant knew Hartman as a police officer when he came to his bedroom with Ard he certainly would not have sold him the tablets. This is why at the conclusion *603 of defense counsel’s questioning of, the daughter, he asked her didn’t she know Hartman was a policeman and didn’t she tell her father he was. This opened the door to the prosecutor’s questions as to how she knew he was a policeman and defendant willingly allowed her to testify as to all the details of her dealings with Hartman and her mother’s involvement. It appears that defendant took a calculated risk of deliberately allowing all of this evidence about the arrest and the mother’s conviction to come out in order to create doubt in the minds of the jury that the defendant would sell drugs to the same policeman.
In summary, we have concluded that the evidence of the daughter’s arrest and the mother’s conviction cannot provide a basis for objection on appeal, because defendant made no contemporaneous objection to this evidence in the trial court when it was initially produced and he made a conscious decision to allow this evidence in order to provide a basis for his argument that he did not sell the tablets to a person he knew was a policeman.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.